NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0419n.06

No. 21-3574

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 20, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE NORTHERN |
| DELAMON A. MARSHALL, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |
|  | ) | |

Before: BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Delamon Marshall pleaded guilty to four firearm charges and was sentenced to 240 months imprisonment. On appeal, he raises several challenges to his conviction and sentence, including that his sentence was procedurally and substantively unreasonable. We affirm.

I.

In February 2017, Ohio police officers stopped the car Marshall was driving for a traffic violation. During the stop, the officers found a firearm in the vehicle that Marshall admitted was his. Then, on March 17, 2017, officers responded to a shooting in Akron, where they found Marshall and another man, each wounded with several gunshot wounds. Witnesses told police that the other man (who ultimately died from his wounds) was retrieving belongings from the residence when Marshall arrived; a dispute ensued, and each man shot the other. The weapons found in Marshall's possession in both instances had an obliterated serial number.

A federal grand jury indicted Marshall on two counts of possessing a firearm and ammunition as a felon, 18 U.S.C. § 922(g)(1), and two counts of possessing a firearm with an obliterated serial number, 18 U.S.C. § 922(k). He pleaded guilty to the four charges without a plea agreement.

The presentence report recommended that Marshall be classified as a career criminal under Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on a prior conviction for bank robbery and his two prior convictions for Ohio felony domestic violence under Ohio Rev. Code § 2919.25(A). He objected to being sentenced as such, but the district court concluded otherwise, noting it was bound by Sixth Circuit precedent. The district court allowed defense counsel, Marshall, and the government to address the court. It then calculated Marshall's Guideline's range at 180 to 210 months, and the district court sentenced Marshall to an above-Guidelines sentence of 240 months. Marshall now appeals.

II.

Marshall begins his appeal by raising two arguments that are foreclosed by our circuit's precedent. He first contends that his two prior felony convictions under Ohio Rev. Code § 2919.25(A) are not predicate violent felony convictions for purposes of the ACCA. *United States v. Gatson* holds otherwise, 776 F.3d 405, 411 (6th Cir. 2015), and we are bound by that determination. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). And we have twice rejected the argument that our en banc decision in *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc), abrogated *Gatson*. *See United States v. Mickel*, No. 21-3561, 2022 WL 1100459, at *2 (6th Cir. April 13, 2022); *United States v. Melendez-Perez*, No. 20-3925, 2021 WL 3045781, at *3 (6th Cir. July 20, 2021). Therefore, we are bound by *Gatson*, and Marshall's prior domestic-violence convictions qualify as violent felonies for ACCA purposes.

Second, Marshall argues that, pursuant to *United States v. Lopez*, 514 U.S. 549 (1995), the Commerce Clause did not give Congress the authority to enact § 922(g)(1)'s felon-in-possession proscription. Again, we have resolved this issue to the contrary. *See United States v. Chesney*, 86 F.3d 564, 568–70 (6th Cir. 1996); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir. 1996). And we have continued to conclude that § 922(g)(1) is constitutional, even after the Supreme Court decided the subsequent (and distinguishable) case noted by Marshall*, United States v. Morrison*, 529 U.S. 598 (2000). *See, e.g.*, *United States v. Henry*, 429 F.3d 603, 619–20 (6th Cir. 2005); *see also United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *1–2 (6th Cir. March 7, 2022). We cannot depart from the holdings of *Turner* and *Chesney* and therefore reject Marshall's Commerce Clause challenge. *See Salmi*, 774 F.2d at 689.

III.

Next, Marshall raises several arguments regarding his sentence, contending that it was procedurally and substantively unreasonable and that he was denied his right to allocution. We disagree.

A.

First, he contends that his sentence was procedurally unreasonable because the district court relied on issues for which he was not given notice prior to sentencing. Because Marshall did not raise a specific objection, we review this contention for plain error. *See United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (citation omitted). "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *Id*. at 873 (citation omitted).

A district court's sentence may be procedurally unreasonable for several reasons, including "selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). This may occur when "the facts or issues on which the district court relied to impose a variance came as a surprise and the defendant's presentation to the court was prejudiced by the surprise." *United States v. Fleming*, 894 F.3d 764, 768 (6th Cir. 2018) (brackets and citation omitted). "'[T]he weight the court ultimately assigned to unexpected considerations' may contribute to the surprise." *Id*. at 769 (brackets and citation omitted).

Marshall points to certain comments made by the district court, contending that they "came as a surprise" to him. Specifically, he states that the district court relied on vague references to the need to break the "cycle of violence." According to Marshall, the district court was concerned that "everybody is killing each other nowadays" and that children too often turned into adults who were "killing people[,] . . . knifing people, carjacking[], beating up older people." He contends that the court's reliance on these considerations was unexpected and unfairly prejudiced him, likening the scenario to *Fleming*, where the district court surprised the defendant by relying on an unrelated news article on cocaine-opioid deaths to sentence the defendant. 894 F.3d at 768–70.

But a review of the hearing demonstrates that these comments should not have been unexpected to him because they were directly responsive to comments he previously made to the court. *Cf. id.* at 768. Marshall raised numerous arguments in support of mitigation during allocution. Specifically, he noted several young family members who had been "gunned down" and who had died from "senseless violence." He explained that he had been doing community service with children alongside a local pastor; he wanted "to focus on the kids, on the children, because the only way to change anything is through the children." His view was that "change ain't going come today; it's going to come down the line." Because of that work and his new perspectives, he wanted the court to judge him "as the person that [he is] and not the person that

[he] was." The district court's statements directly responded to Marshall's prior arguments—the court merely "agree[d] with [him]" that change "has to be with the kids." For the district court, that started with Marshall because his "kids are looking at" him and he had demonstrated a "constant disrespect for the law." In other words, the district court's comments responded to the broader societal implications raised by defendant, and, thus, nothing about the district court's comments was surprising. But when the time came to sentence Marshall, the district court based its sentence on the circumstances of Marshall's offenses, his lack of responsibility, and the need to protect and deter the public from other crimes. These are all proper factors to consider under 18 U.S.C. § 3553(a). *Cf. United States v. Davis*, 458 F.3d 505, 511–12 (6th Cir. 2006). Therefore, the district court neither "surprised" Marshall nor relied on improper factors.

B.

Marshall next contends that his sentence was substantively unreasonable because the district court improperly considered local issues unrelated to his conduct. Unlike procedural reasonableness challenges, substantive reasonableness challenges need not be preserved for appeal; thus, this review is for an abuse of discretion. *United States v. Freeman*, 640 F.3d 180, 185–86 (6th Cir. 2011). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

Marshall's substantive reasonableness challenge fails for similar reasons as his procedural reasonableness one. Contrary to his argument, the district court did not rely on unrelated local issues that did not pertain to Marshall, such as news reports or crime statistics. Rather, the district court responded to Marshall's mitigation argument that he was concerned about the community

and agreed with the broad social theories advanced by defendant, but it then rejected the premise that they warranted a mitigated sentence. Instead, the need to protect the community, Marshall's lack of responsibility, and the circumstances of his offense warranted greater punishment. These are, again, permissible factors to consider. *See Davis*, 458 F.3d at 511–12. Consequently, Marshall's sentence is substantively reasonable.

C.

During sentencing, Marshall's attorney argued that Marshall should not be assessed a four-level Guidelines enhancement in connection with another crime under U.S.S.G. § 2K2.1(b)(6)(B) given his position that Marshall's actions on March 17 constituted "self-defense and not a crime." The district court agreed and did not impose the increase. The government responded by asserting that: (1) Marshall's sentence should still account for the fact that a death resulted, allowing an upward departure under U.S.S.G. § 5K2.1; and (2) the name of Marshall's security company, "Try Me Security," evinced his proclivity to respond violently. Defense counsel then asked, "[M]ay I respond very briefly?" When the district court denied the request, Marshall raised no further comment. He contends on appeal that the district court's refusal denied him the right to allocution.

A defendant must indicate "some type of discontent" to ensure de novo, not plain-error, review for a claim of denial of allocution. *United States v. Carter*, 355 F.3d 920, 926 & n.3 (6th Cir. 2004). When a defendant asks to "at least straighten out a fact," that "'indicate[s] some type of discontent' regarding [the defendant's] inability to readdress the court." *United States v. Lanning*, 633 F.3d 469, 476 (6th Cir. 2011) (citing *Carter*, 355 F.3d at 926 n.3). Defense counsel's generic request to respond briefly did not so indicate. *Id.*; *cf. Bostic*, 371 F.3d at 871 (noting that a defendant must "object with that reasonable degree of specificity"). Thus, we review the issue for plain error.

Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires a district court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." This right to allocution "is the right to present a defendant's plea in *mitigation* and is not unlimited." *Carter*, 355 F.3d at 926 (internal citation omitted); *see also United States v. Oliver*, 441 F. App'x 328, 329 (6th Cir. 2011) (per curiam) ("Rule 32 permits reasonable limitations on counsel's time to address the court." (internal quotation marks omitted)). A defendant is not denied the right to allocution merely because he was not allowed the "last word in rebuttal" or that the "district court refused to allow him to readdress the court after the government rested." *Lanning*, 633 F.3d at 476.

The district court did not err, plainly or otherwise, by denying Marshall's request to readdress the court. For one, it provided Marshall and his attorney a full opportunity to address the court. *See* Fed. R. Crim. P. 32(i)(4)(A)(i)–(ii). When doing so, defense counsel presented a self-defense argument contending that that Marshall was not criminally responsible for the March 17 death, which necessarily addressed the factual basis for the government's "death resulting" contention. Second, Marshall's mitigation arguments attempted to convince the court that he had personally changed through his community service, and, therefore, he had neither a proclivity for violence nor was a danger to his community. This too addressed the basis for the government's "Try Me" contention—that Marshall had a propensity for violence. Therefore, the district court did not err by refusing to permit Marshall to simply have the "last word." *Cf. Lanning*, 633 F.3d at 476.

Further, Marshall was not prejudiced by this refusal. The district court did not grant a Guidelines-based departure under § 5K2.1, nor did it reference "Try Me Security" as showing defendant's proclivity for violence. Instead, the district court relied on other permissible factors—

the seriousness of Marshall's crimes, his criminal history, and the need to protect the community by punishing Marshall. *See Davis*, 458 F.3d at 511–12. The court's reliance on those factors was appropriate, especially when Marshall had already presented his mitigation arguments.

IV.

For those reasons, we affirm the judgment of the district court.